IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

RONNIE L. WILLIAMS                         §
                                           §
v.                                         §        CIVIL ACTION NO. G-06-035
                                           §
JO ANNE B. BARNHART,                       §
COMMISSIONER OF SOCIAL SECURITY            §

## OPINION AND ORDER

Plaintiff Ronnie Williams brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), requesting judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits under Title II of the Social Security Act.  Currently before the Court is Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment.  Given the nature and  severity of the evidence and the Court's commitment to avoid unnecessary delay and congestion in its large social security case docket, the Court will forego a Report and Recommendation and issues the following Opinion and Order.

## Background

Plaintiff filed his application for disability insurance benefits on April 16, 2003, alleging an inability to work since December 28, 2002, when he suffered a back injury while lifting a patient during his course of employment as an EMT.  *See* Pl.'s Br. at 3.  Plaintiff's claims were denied initially and upon reconsideration on October 22, 2004.  A hearing was held on January 6, 2005, and

1

the Administrative Law Judge ("ALJ") issued an unfavorable decision on August 26, 2005.  Tr. at

19.  On November 25, 2005,  the Appeals Council declined Plaintiff's request for review, and the

ALJ's decision became the final decision of the Commissioner.

In finding that Plaintiff was not disabled, the ALJ made the following findings:

1. The claimant was insured during the relevant period under consideration.

2. No evidence of substantial gainful activity exists during the relevant period under consideration.

3. The claimant has the following "severe" medically determinable impairments: status-post lumbar laminectomy.

4. None of the claimant's impairments, either singly or in combination, is attended by clinical or laboratory findings which meet or medically equal the criteria for any impairment set forth in Appendix I to Subpart P of Regulations No. 4 ("Listing of Impairments") for presumptive disability, the listed severity criteria being absent.

5. The claimant's testimony of pain, other subjective complaints, and functional limitations is not credible to the extent of total disability.

6. The claimant retains the residual functional capacity to perform sedentary work.

7. The claimant cannot perform his past relevant work.

8. The claimant is an individual closely approaching advanced age with a high school equivalent education.

9. The claimant acquired readily transferable skills in his past work.

10. Under the general framework, the claimant's medical vocational profile corresponds to Rule 201.15, which directs a finding of "not disabled."

11. The claimant can perform sedentary semi-skilled jobs which exist in significant numbers in the national economy.

12. The claimant has not been under a disability, as defined in the Act, at any time through the date of this decision.

At the time of the administrative hearing, Plaintiff was a fifty-three year old man who held

a general equivalency diploma (GED). From the mid-eighties until 1991, he worked as a full-time auto mechanic.  In 1991, he became an E.M.T.; he received his paramedic license in 1995 and worked as a paramedic until his injury in 2002. TR. at 58.  On December 28, 2002, he and his E.M.T. partner were called to lift a heavy, large patient from a dialysis center recliner.  As they lifted the patient, Plaintiff's partner "suddenly let go of the patient and Plaintiff was jerked over to the other side of the recliner."  TR. at 26-27.  This action made Plaintiff feel like "someone had stuck a hot knife in me."  *Id*.  Within twenty minutes of this incident, Plaintiff felt severe pain in his back, right hip and down his right leg to the ball of his foot.  TR. at 27.  He called his physician and was prescribed pain medication.  The medication did not relieve his pain, prompting him to go the emergency room on January 1, 2003, where he was prescribed Naproxin and Lortab and was scheduled for an MRI.  The MRI, performed on or about January 4, 2003,  revealed multilevel disc bulges, degenerative changes, spondolytic bars at L2 and L3, changes at L4 and L5 that were causing a narrowing of the spinal canal, an osteophyte at L5-S1, and a possible protruding disc adjacent to the right 5th nerve root.  Plaintiff was prescribed additional pain medicine - hydrocodone, Neurontin and Orudis, and was referred to Dr. Reynolds in February 2003, who tried to relieve Plaintiff's pain with an injection in his right lower lumbar spine.  The injection did not work and Plaintiff's pain returned "with a vengeance."  At this time,  Plaintiff did not have insurance and was unable to afford any meaningful medical treatment for his back pain for the remainder of 2003 and the first half of 2004.  During that period he was able to obtain his medications from the 4C's indigent care clinic in Galveston and he sought chiropractic care.  In September 2003, Plaintiff's chiropractor noted muscle spasms in the lumbar region, bilaterally, and numbness in both legs.

Ten months later, in July 2004, Plaintiff somehow fell under the care of Dr. Garges,  Chief

of Neurology and the Spine Clinic at UTMB.  Dr. Garges performed nerve block surgery but it did

not relieve Plaintiff's pain, which Plaintiff describes as being so intense that he "could not sleep and

could not think straight, a constant burning pain that prevented [his] walking and caused 'electrical

jolts' down [his] leg, causing [him] to fall."  TR. at 28.  In September 2004, Dr. Garges noted that

Plaintiff had failed conservative care, including activity modifications, medications, and selective

nerve root block.  He diagnosed Plaintiff with bilateral stenosis in the lumbar region and L5

radiculopathy on the right side.  Dr. Garges recommended Plaintiff undergo decompression surgery

of the nerves around L5, with exploration of the L5 nerve root, aimed at relieving L5 nerve root pain

that extended into Plaintiff's foot and calf.  Dr. Garges warned  Plaintiff of the dangers of the

surgery, which included the possible need for future decompression surgery, the possibility of

weakness, bowel and bladder problems and paralysis.  Plaintiff was also informed that the surgery

may not relieve his pain, that he may be faced with increasing disability and that he may never be

able to resume his normal lifestyle.   Plaintiff opted to undergo the surgery which was performed on

September 7, 2004.

Plaintiff also suffered from severe, unrelenting headaches and presented to the emergency

room on September 10, 2004, where a CT scan was performed.  Plaintiff was diagnosed with

sinusitis. Because of the severity of the sinusitis, Dr. Teller performed a "frontal sinus obliteration,"

which involved the insertion of plates in Plaintiff's sinuses.  Plaintiff's headaches continued,

however, and shortly thereafter, on October 21, 2004, he was diagnosed with a cerebrospinal fluid

leak and a staph infection at the site of his spinal surgery wound.  Plaintiff was treated and released

from the hospital on October 29, 2004, by Dr. Chen, who ordered that he use a cane to walk.

Plaintiff was seen by Dr. Chen again on December 10, 2004.  She noted the following: increasing

back pain; increasing bilateral lower extremity pain and numbness; inability to work since December 28, 2002; increasing bilateral leg pain; falling approximately once a day; difficulty walking; feels things crawling on his legs; pins and needles in both feet; bad headaches; 15-20 minutes of sitting and standing tolerance before having to sit down because of leg pain; antalgic gait favoring the right side; decreased sensation in right foot and thigh; and possible major depressive disorder. TR. at 343. On December 12, 2004, an EMG study was performed by Dr. Nelson which showed "evidence of longstanding, bilateral lesions of multiple lumbosacral roots or their anterior horn cells."   TR. at 339-340.

Plaintiff's visits to the doctor continued into 2005, the first being with Dr. Campbell on January 7.  Plaintiff's history remained basically the same as it was when he saw Dr. Chen in December 2004.  He was prescribed additional pain medication, Darvocet and Ultram.  On January 14, Plaintiff was examined by Drs. Chen and Launikitis after having another MRI.  It was noted that he had an antalgic gait and walked with a cane with decreased sensation of his right foot and right thigh.  Dr. Launikitis prescribed a "rolling walker" to help Plaintiff walk.  Plaintiff also saw Dr. Garges on January 14.  Dr. Garges noted that the MRI and ENG nerve conduction studies showed a longstanding L5 radiculopathy which correlated with his ongoing symptoms of pain.  He noted Plaintiff's failure to respond to conservative as well as surgical care, the need for daily narcotic medication to control the pain in his back and leg and the need for a cane to walk.  He expressed doubt as to whether Plaintiff would ever be able to be gainfully employed.

A federal court reviews the Commissioner's denial of benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence.  *Brown v. Apfel*, 192 F.3d 492, 493 (5th Cir.

1999).  A court may not reweigh the evidence or try the issues *de novo*.  *Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988).  Conflicts in the evidence are for the Commissioner, not the Court, to resolve.  *Brown*, 192 F.3d at 496.

Substantial evidence is defined as being more than a scintilla and less than a preponderance and of such relevance that a reasonable mind would accept it as adequate to support a conclusion. *Ripley v. Charter*, 67 F.3d 552, 555 (5th Cir. 1995).  If the Commissioner's findings are adjudged to be supported by substantial evidence, then such findings are conclusive and must be affirmed. *Id*.  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision.  *Johnson*, 864 F.2d at 343-344.  Four elements of proof are weighted by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education and work experience.

A claimant is disabled within the meaning of the Social Security Act if he has a medically determinable physical or mental impairment lasting at least 12 months that prevents him from engaging in substantial gainful activity.  42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572(a) and (b).   The ALJ must use a five step process in evaluating disability claims to decide whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in the Appendix of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work.  20 C.F.R. §

6

404.1520.  If the Commissioner decides at any step along the way that an individual is not disabled,

the evaluation process comes to a halt at that particular step and proceeding further becomes

unnecessary.  *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984).  Additionally, only if the final

step in the process is reached does the fact-finder consider the claimant's age, education, and work

experience in light of his or her residual functional capacity.  *See Rivers v. Schweiker*, 684 F.2d

1144, 1152-1153 (5th Cir. 1982).

In this case the ALJ found that Plaintiff was not disabled because, although he could not

return to his past relevant work as a paramedic or auto mechanic, he had the residual functional

capacity ("RFC") to perform other work existing in significant numbers in the national economy,

such as hospital clerk, outpatient admittance clerk and registrar clerk.

The Treating Physician and RFC Issue

Plaintiff argues that the ALJ erred in not giving proper weight to the medical opinions

submitted by his treating physicians.  In her assessment of Plaintiff in December, 2003, Dr. Chen

stated that Plaintiff had increasing back pain and increasing bilateral lower extremity pain and

numbness, especially on the right side; an antalgic gait, difficulty in walking and must walk with a

cane; and had only 15-20 minutes of sitting and standing tolerance before he had to sit down

secondary to leg pain.   TR. at 256.   Dr. Garges stated in his Assessment Plan that even after

decompressive spinal surgery in September 2004,  Plaintiff had a longstanding L5 radiculopathy with

pain in his back and leg, with diminished strength on his right side.  He further stated that based on

Plaintiff's physical examination findings, his longstanding history of leg and back pain, his EMG

nerve conduction studies and his failure to respond to conservative and surgical care, he would be

unable to perform gainful work anytime in the present or distant future.  TR. at 336.  The vocational

expert testified that Plaintiff could perform sedentary jobs at the low level, such as hospital admitting clerk or registration clerk, if he was not in pain and/or not confused or unable to concentrate because of the side-effects of pain medication.  TR. at 53-54.

Ordinarily, the opinions of treating physicians are given considerable weight in determining disability.  *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).  This is especially true when the treatment period has been over a considerable period of time.  *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). Less weight can be given if good cause is shown. Good cause includes conclusory statements from the treating physician, opinions otherwise unsupported by the evidence, or conclusions unsupported by medically accepted clinical techniques.  *Newton v. Apfel,*  209 F.3d 448, 456 (5th Cir. 2000).  Conflicts between the conclusions of different physicians are reserved for the Commissioner.  *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).  However, the ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."  *Loza v. Apfel*, 219 F.3d 378, 393  (5th Cir. 2000).

The Social Security Regulations provide a framework for the consideration of expert medical opinions of a claimant's treating physician.  Under 20 C.F.R. § 416.927(d)(2), consideration of a treating physician's opinion *must* be based on: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the record, (5) the consistency of the opinion with the record, and (6) the treating physician's specialty.

The ALJ in this case noted these requirements. Although he never assigned any specific weight to Dr. Garges' reports, it is clear that the ALJ gave it little or no consideration at all.  He concluded that Dr. Garges' report was neither "credible nor consistent with the objective evidence

8

of the record," a conclusion based primarily on the following: one of his assessments was unsigned; Plaintiff admitted improvement with therapy; Plaintiff's testimony regarding his level of pain was unsupported and not credible; and the assessment of another physician, Dr. Launikitis, who examined Plaintiff once, was in conflict with Garges' assessment (although in fact, it was not).  TR. at 16.  For these reasons, the ALJ concluded that Dr. Garges' conclusions were unsupported by medical and laboratory evidence and contradicted by other evidence in the record.

The Commissioner concluded, in very general terms, that the ALJ did not err in concluding that Dr. Garges' opinion regarding Plaintiff's medical condition should not be given any weight.  The Commissioner based her finding on Dr. Garges' statement that he felt Plaintiff was unable to perform any work in the present or distant future.  True, the ALJ is not required to give weight to a treating physician's opinion regarding disability because such conclusions are not medical opinions and are reserved to the Commissioner.  20 C.F.R. § 404.1527(e)(1).  However, the ALJ completely discounted all of Dr. Garges' medical findings and conclusions regarding the Plaintiff, including Plaintiff's complaints of unrelenting pain.  The ALJ discounted the fact that Dr. Garges personally examined and treated Plaintiff from the time Plaintiff could first afford medical care,  through his surgery in 2004 and through 2005.  The record is replete with evidence that Dr. Garges was obviously intimately acquainted with Plaintiff's medical history.

The ALJ's reliance on Plaintiff's statement that he is getting better and had not complained about pain to his physicians entirely overlooks the evidence throughout the record that Plaintiff took significant amounts of medication to control unrelenting pain between the onset date and hearing date.  Plaintiff's prescriptions in January and February 2003 included five hydrocodone/APAP (Vicodin) tablets a day,  Lortab every day, two Naproxen tablets a day,  Orudis every day, Robaxin,

and three Neurontin tablets per day.  In August 2003 Celebrex was added to the list.  In December 2004, Plaintiff was taking four Ultram tablets a day for pain, six Darvocet tablets a day for pain, six Vicodin tablets a day for pain, Motrin, Flexeril, and Neurontin.  In May 2005, Vicodin was dropped from the list of pain medications, yet Plaintiff still needed five Darvocet tablets and four Ultram tablets a day to manage his pain; Effexor and Trazadone for depression; and all the other medications previously listed for December 2004. TR. at 123, 139, 140, 143, 146, 150, 159, 160, 225, 240, 246, 250, 255, 272, 276, 288, 305, 306, 342, 344 and 354.

With respect to Plaintiff's pain, the ALJ's reasons for refusing to find Plaintiff's complaints fully credible are not supported by the evidence.  Pain can be disabling in and of itself and must be linked to a medical impairment that would reasonably be expected to give rise to the kind of pain complained of by a claimant.  *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1983). Contrary to the ALJ's findings,   Plaintiff <u>did</u> complain about the side effects of the medication; there <u>is</u> documented evidence that a doctor prescribed the use of a cane; and Plaintiff continues to take medication to manage his pain.  In fact, Plaintiff's pain was such that he opted for spinal decompression surgery that ran the risk of neurologic injury up to, and including, paralysis. The ALJ's unsupported statements and his reliance on an isolated statement by Plaintiff do not provide substantial evidence for disregarding Plaintiff's complaints of pain or the treating physician's report, and would appear to be a prohibited "picking and choosing" of evidence in the record.  *Loza*, 219 F.3d at 393.

With regard to Dr. Garges' opinions, diagnoses and treatment of Plaintiff, there are virtually no gaps or omissions.  His opinions regarding the condition of Plaintiff's spine and nervous system are well documented and supported by numerous MRIs, nerve conduction studies and CT scans.  The ALJ determined, nevertheless, that Dr. Garges' opinion was not credible and therefore not entitled

10

to significant weight.  Social Security Ruling 96-2p specifically states that even when treating source opinions are not given controlling weight, they "are still entitled to deference and must be weighted using all of the factors provided in 20 C.F.R. § 416.927(d)(2) and 404.1527."  It is well established in this Circuit that an ALJ is "required to consider each of the ... factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 458.  In this case, the ALJ completely overlooked at least three of the six factors in considering the "treating physician rule":  (1) Dr. Garges treated Plaintiff over a considerable period of time; (2) the treatment relationship was ongoing and supported by extensive tests; (3) Dr. Garges is a specialist and Chairman of the Department of Neurology at UTMB.

This is troubling in Plaintiff's case because the ALJ did not rely on conflicting evidence provided by other physicians.  He stated generally that the opinion of Dr. Launikitis was in conflict with that of Dr. Garges' but did not state how.  He merely concluded that tests ordered and interpreted by Dr. Garges himself did not support Dr. Garges' own medical conclusion.  While the ALJ has the sole responsibility for determining the claimant's disability status, and a treating physician's opinion is never conclusive, the ALJ must consider each of the factors of § 404.1527(d) before disregarding a treating specialist's opinion.  The failure to do so, as in the instant case, requires remand.  *Newton*, 209 F.3d at 456.

In light of this shortcoming, the ALJ's RFC determination also requires reconsideration. RFC is what can still be done in light of present severe impairments and limitations.  The vocational expert testified that given the limitations outlined by Dr. Garges and the pain attested to and supported by the record, Plaintiff could not perform even low-level sedentary jobs. TR. at 64.  The Commissioner disagreed with the opinion of the VE, relying instead on the ALJ's determination

11

regarding the Plaintiff's credibility and the lack of evidence supporting Dr. Garges' medical conclusions.  If the ALJ had provided proper reasons for his evaluation of the treating physician's report, the Court would be required to say that the ALJ's RFC assessment is supported by substantial evidence.  However, it is difficult to understand how the current RFC conclusion can be supported when the ALJ did not provide proper grounds for rejecting Dr. Garges' reports that directly contradict his assessment.

The Court therefore **ORDERS** that Plaintiff's Motion is **GRANTED** and Defendant's Motion is **DENIED** on the disability issue, the date of onset, and the RFC determination.

Plaintiff also asserts that the ALJ erroneously determined that he did not meet or equal the requirement of any listed impairment, including Appendix 1, Listing 1.04: "Disorders of the Spine, *e.g,* herniated *nucleus pulposas*, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, spinal vertebral fracture resulting in compromise of a nerve root (including the *cauda equina*) or the spinal cord: with C. lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriately medically acceptable imaging manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."  Plaintiff bases his belief on the testimony of the medical expert, extracting one sentence from the her testimony, where she says, "I had a couple of notes and that's why I get soft and I say, no, I don't look at meet I say equal." TR. at 56.  Plaintiff states that although the ME contradicted herself in her testimony, "her intent was apparent."

The testimony of the medical expert was very, very difficult to interpret because the syntax was disjointed and rambling, possibly because the medical expert may be of foreign nationality.  At any rate, the medical expert notes that in 2004 Plaintiff had lateral recess stenosis.  At that point, the

12

medical expert believed that Plaintiff's condition equaled that of a 1.04 Listing.  But the medical expert goes on to say, "and of course, they did the surgery to correct the lateral recess stenosis."  TR. at 57.  When the ALJ asked the medical expert if, after the surgery, there is no listing or equaling, the medical expert answered: "Correct.  Now we've done the surgery...so now we take care of that."  TR. at 57.  The final assessment of Plaintiff's post-surgical condition, dated January 2005, states that Plaintiff's MRI and CT scan show no compression of the thecal sac, no herniated nucleus pulposas, no severe stenosis, diskitis, arachnoiditis or new compression in the lumbar spine.  TR. at 349.  A claimant cannot be found disabled pursuant to the Appendix 1 listings unless he can show that he meets or equals all of the specified medical criteria of the particular listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Plaintiff failed to produce evidence to satisfy this burden.

Accordingly, the Court **ORDERS** that Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED** on this issue.

For the foregoing reasons, it is **ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and that Defendant's Cross Motion for Summary Judgment is **DENIED IN PART**.  The Court further **ORDERS** that the ALJ's decision is **REVERSED AND REMANDED** to the Social Security Administration for further consideration consistent with this opinion.

**DONE** at Galveston, Texas, this 5th day of March, 2007.

Samuel B. Kent
United States District Judge

13